IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION

**CORTLAND ESCH, and**        **PLAINTIFFS**
**ROXANNE ESCH**

**V.**        **NO. 3:23-CV-477-DMB-RP**

**CMH HOMES, INC.; STEPHEN**
**FLYNN; FRANKLIN STRUCTURES,**
**LLC; SOUTHSTATE BANK;**
**ROBERT RIZZETTA; MOBILE**
**HOME MIKE, LLC; MIKE LONG;**
**and UNKNOWN SURETY BOND**
**HOLDERS**        **DEFENDANTS**

**ORDER**

CMH Homes and Stephen Flynn move to compel arbitration of Cortland and Roxanne Esch's claims. Because the Esches agreed to arbitrate their claims and did not respond to the motion to compel with any objection to arbitration or reason why arbitration should not proceed, arbitration will be ordered.

**I**
**Procedural History**

On October 27, 2023, Cortland Esch and Roxanne Esch filed a "Petition for Rescission, Fraud and Damages" in the Chancery Court of Pontotoc County, Mississippi, against CMH Homes, Inc.; Stephen Flynn; Franklin Structures, LLC; SouthState Bank; Robert Rizzetta; Mobile Home Mike, LLC ("MHM"); Mike Long; and unknown surety bond holders, asserting various state and federal claims related to their purchase of a manufactured home from CMH Homes. Doc. #2 at 1–2, 30–33. Asserting federal question jurisdiction under the Magnuson-Moss Warranty Act, CMH Homes and Flynn, with the consent of the other defendants, removed the case to the United States District Court for the Northern District of Mississippi on December 18, 2023. Doc.

#2; *see* Docs. #1-6 (consent of Long and MHM), #1-7 (consent of Franklin Structures), #1-8 (consent of SouthState Bank and Rizzetta).

On January 25, 2024, CMH Homes and Flynn filed a "Motion to Compel Arbitration" with respect to the claims against CMH Homes, Flynn, Franklin Structures, MHM, and Long. Doc. #18. According to the motion, "Co-Defendants do not oppose the motion. Plaintiffs oppose the motion." *Id.* at PageID 441. However, the plaintiffs did not respond to the motion within the time period mandated by the Local Rules or at any subsequent point.

## II
## Discussion

The Federal Arbitration Act ("FAA") "provides that written arbitration agreements are generally valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." *Robertson v. Intratek Comput., Inc.*, 976 F.3d 575, 579 (5th Cir. 2020) (citation and internal quotation marks omitted). This provision "requires courts to enforce covered arbitration agreements according to their terms." *Lamps Plus, Inc. v. Varela*, 139 S. Ct. 1407, 1412 (2019). "When considering a motion to compel arbitration under the FAA, a court employs a two-step analysis. First, a court must determine whether the parties agreed to arbitrate the dispute in question. Second, a court must determine whether legal constraints external to the parties' agreement foreclosed the arbitration[.]" *Tittle v. Enron Corp.*, 463 F.3d 410, 418 (5th Cir. 2006) (cleaned up). "If the court concludes that there is a valid agreement to arbitrate and that there are no legal impediments to doing so, then the court must grant the motion." *Signal Ridge Owners Ass'n v. Landmark Am. Ins. Co.*, 657 F. Supp. 3d 866, 872 (N.D. Tex. 2023).

"[T]here is a strong presumption in favor of arbitration." *Carter v. Countrywide Credit Indus., Inc.*, 362 F.3d 294, 297 (5th Cir. 2004). "The party seeking arbitration has the burden of establishing the existence of an agreement to arbitrate." *Est. of Benitez v. Sears, Roebuck & Co.*,

2

2013 WL 4223875, at *2 (N.D. Tex. Aug. 14, 2013). Once an agreement to arbitrate is established, "a party seeking to invalidate an arbitration agreement bears the burden of establishing its invalidity." *Carter*, 362 F.3d at 297.

In seeking arbitration here, CMH Homes and Flynn rely on a "Binding Dispute Resolution Agreement" ("Agreement") attached as an exhibit to their motion to compel. Doc. #18-2. The Agreement is signed by both Courtland and Roxanne each as "Buyer" and on behalf of "Clayton Homes Tupelo, MS"[1] as "Seller." *Id.* at PageID 450. The Agreement begins:

> The Parties (defined below) agree to resolve all disputes pursuant to the terms of this Binding Dispute Resolution Agreement …. The Parties are defined as the buyer (whether one or more) who signs below (referred to hereinafter as "Buyer") and CMH Homes, Inc., and their/its agents, assignees, successors in interest, and employees (collectively referred to as "Seller"). Buyer and Seller agree that this Agreement also applies to and governs the rights of intended beneficiaries of this Agreement, who include the following additional Parties: (i) manufacturers of the Home (defined below); (ii) contractors, including, without limitation, contractors involved in delivery and set-up of Buyer's Home; (iii) title companies and closing attorneys involved in any transaction made in connection with Buyer's Home purchase; (iv) all who sign or benefit from the Contract (defined below); (v) anyone claiming an interest in the Home, (vi) property owners receiving a benefit from the Contract, the Home or use of the Home, and (vii) any occupants of the Home (referred to hereafter collectively as "Beneficiaries") (Buyer, Seller, and Beneficiaries may be referred to herein as "Party" or "Parties").
>
> <u>Scope of the Agreement</u>: This agreement applies to all pre-existing, present, or future disputes, claims, controversies, grievances, and causes of action against Seller, including, but not limited to, common law claims, contract and warranty claims, tort claims, statutory claims, administrative law claims, and any other matter in question, not otherwise excepted herein, arising out of or relating to (i) the modular or manufactured home(s) purchased, sold, owned, occupied and/or delivered in any transaction with Buyer or Beneficiaries (the "Home"), (ii) the documents related to the purchase and sale of the Home …, (iii) any products goods, services, insurance, supplemental warranty, service contract, and real property (including improvements to the real property) sold under or referred to in the Contract, (iv) any events leading up to the Contract, (v) the collection and servicing of the Contract, (vi) the design and construction of the Home, and (vii) the interpretation, scope, validity and enforceability of the Contract ….

---

[1] Though not specified in the complaint's caption, the complaint's body references CMH Homes as "CMH Homes, Inc. d/b/a Clayton Mobile Homes of Tupelo, MS." Doc. #2 at 1.

*Id.* at PageID 447 (paragraph lettering omitted). Based on the Agreement's provisions, CMH Homes and Flynn argue that the Esches agreed to arbitrate their claims;[2] the Agreement applies to Flynn as CMH Homes' agent; the Agreement applies to Franklin Structures, MHM, and Long as express third party beneficiaries; and the Esches' claims are within the scope of the Agreement. Doc. #19 at 7–12.

Because the Esches did not respond to the motion to compel, there is no dispute that they signed the Agreement and that the Agreement applies to their claims. Based on this, as well as the Court's independent review of the Agreement and the claims asserted, the Court concludes that a valid and binding agreement exists requiring the Esches to arbitrate their claims in this case.

Also due to the Esches' lack of response, there is nothing indicating any legal impediments to arbitration. And while the motion to compel represents that the Esches object to it,[3] the Court has no knowledge that such is the case or on what grounds they purportedly object because they did not file a response. Consequently, the Esches have not established any reason to challenge the validity of the Agreement's arbitration requirement or the application of the Agreement to their claims.[4] *Carter*, 362 F.3d at 297.

---

[2] Section C of the Agreement provides that "[a]ll Claims that cannot be settled through direct discussions and negotiation shall be submitted first to mediation with a mutually agreeable mediator ('Mediation'). If the Parties cannot agree on a mediator within a reasonable time, then the Mediation shall be administered by the American Arbitration Association ('AAA')[.]" Doc. #18-2 at PageID 447. The Agreement's Section D states that "[t]he Parties agree to mandatory, binding arbitration ('Arbitration') of all Claims that are not resolved in Mediation." *Id.* Though the Agreement states that mediation is a prerequisite to arbitration, the Esches' failure to respond to the motion to compel leaves unanswered CMH Homes and Flynn's argument that "[a]lthough the [Agreement] provides for mediation before binding arbitration, [the Esches] breached the agreement by filing their Petition" in this case. Doc. #19 at 12.

[3] Doc. #18 at PageID 441.

[4] Local Rule 7(b)(3)(E) provides that where a party fails to timely respond to any non-dispositive motion, "the Court may grant the motion as unopposed." It does not appear that the Fifth Circuit has decided whether a motion to compel arbitration is a dispositive motion. *Lee v. Plantation of La., LLC*, 454 F. App'x 358, 360 n.3 (5th Cir. 2011) (declining to decide). At least two other circuits have concluded that a motion to compel arbitration is a non-dispositive motion. *See V.I. Water & Power Auth. v. Gen. Elec. Int'l*, 561 F. App'x 131, 133–34 (3d Cir. 2014) (motions to compel arbitration are non-dispositive); *PowerShare, Inc. v. Syntel, Inc.*, 597 F.3d 10, 14 (1st Cir. 2010) (concluding same); *see also Adams v. Energy Transfer Partners*, No. 2:16-cv-400, 2017 WL 2347425, at *1 (S.D. Tex. May 30,

## III
## Conclusion

The motion to compel arbitration [18] is **GRANTED**. This case is **STAYED** pending the outcome of arbitration.[5] The parties are **DIRECTED** to notify this Court of the outcome of arbitration within fourteen (14) days of the final arbitration decision.

**SO ORDERED**, this 20th day of February, 2024.

/s/Debra M. Brown
**UNITED STATES DISTRICT JUDGE**

---

2017) (collecting cases). Alternatively then, this Court grants the motion to compel arbitration as an unopposed non-dispositive motion. *See Franco's Athletic Club LLC v. Davis*, No. 21-1647, 2022 WL 229343, at *3 (E.D. La. Jan. 26, 2022) (valid arbitration agreement where "plaintiffs failed to oppose [the] motion and d[id] not argue that the agreement is null and void, inoperative or incapable of being performed"); *Iheanacho v. Air Liquide Large Indus. U.S. L.P.*, No. 19-532, 2020 WL 3451689, at *3 (M.D. La. June 24, 2020) (granting unopposed motion to dismiss claims pending arbitration); *Am. Gen. Life Ins. Co. v. Harper*, No. 3:15-cv-605, at Doc. #17 (S.D. Miss. Apr. 20, 2016) (compelling arbitration on merits but noting Rule 7(b) allows court to grant motion as unopposed).

[5] CMH Homes and Flynn did not request anything regarding the claims against SouthState Bank and Rizzetta. *See* Doc. #18. Their memorandum brief quotes the paragraph of the Agreement providing that "[i]f Buyer or Beneficiaries have Claims against others (each, a 'Third Party') related to or arising from Claims against the Seller … then the Parties agree to consolidate the Arbitration of such Claims against Seller … with the Arbitration of any and all Related Claims, … provided, however, that the Third Party must agree to be joined in the Arbitration of the Related Claims under this Agreement." Doc. #19 at 3 (emphasis omitted); *see* Doc. #18-2 at PageID 448. But CMH Homes and Flynn did not argue that SouthState Bank and Rizzetta are such third parties, nor did SouthState Bank and Rizzetta. The Fifth Circuit has held that where other claims in the same case "are based on the same operative facts and are inherently inseparable," the non-arbitrable claims may be stayed pending the outcome of the arbitration. *Harvey v. Joyce*, 199 F.3d 790, 795–96 (5th Cir. 2000) (if non-signatory to an arbitration agreement "were forced to try the case, the arbitration proceedings would be both redundant and meaningless; in effect, thwarting the federal policy in favor of arbitration"). It appears that the claims against SouthState and Rizzetta are based on the same operative facts as those against the other defendants and are inherently inseparable because the complaint alleges that Rizzetta, SouthState's mortgage broker, acted in concert with CMH Homes to commit fraud. Doc. #2 at 2, 31. For this reason, the claims against SouthState Bank and Rizzetta are also stayed pending the outcome of arbitration.